UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-93-R

**EQUIVENTURE, LLC;**
**BENTLEY FULLER, and his wife**
**SHANNON FULLER,**                                                                                             **PLAINTIFFS**

v.

**RICK WHEAT, and his wife**
**PENNY WHEAT**                                                                                                        **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants, Rick and Penny Wheat's, Motion to Dismiss for Lack of Jurisdiction (Docket #6). Plaintiffs, Bentley and Shannon Fuller, have filed a response (Docket #10). Defendants have filed a reply (Docket #14). This matter is now ripe for adjudication. For the reasons that follow, Defendants' Motion to Dismiss is DENIED.

### BACKGROUND

Plaintiffs, Bentley and Shannon Fuller, as well as Equiventure, LLC, are all citizens of Kentucky. Defendants, Rick and Penny Wheat are both citizens of Arkansas. Rick Wheat travels around the country conducting clinics to promote his product the Noval Headstall. The Noval Headstall is similar to a traditional bridal; however, it uses pressure on the nose of the horse to guide and control the animal rather than a bit in the animal's mouth. Penny Wheat also travels around the country showing trick horses as well as promoting the Noval Headstall.

In November 2004, after attending a clinic held by the Wheats in Paducah, Kentucky, the Fullers invited them to hold a clinic at their farm in Symsonia, Kentucky, in May 2005. After this

event, Rick Wheat invited Bentley Fuller to travel with him promoting the Noval Headstall. While traveling Bentley Fuller and Rick Wheat discussed a possible agreement to utilize Bentley Fuller's marketing and networking experience to build the Rick Wheat brand name.

On November 5, 2006, an oral agreement was reached between the Fullers and Rick Wheat while attending the Houston Mull Memorial Ride in Marshall, Missouri. It was agreed that Bentley Fuller would be responsible for marketing all existing Rick Wheat products, as well as the "signature series," which would be developed by the Fullers. Bentley Fuller was also responsible for improving the Rick Wheat brand name. After sales began, Bentley Fuller would be reimbursed his costs and profits would be split equally, excepting the sale of the Noval Headstall. There was no written agreement. On November 6, 2006, Rick Wheat phoned Bentley Fuller to reaffirm the agreement. Later, a formal handshake at the Fullers' farm in Symsonia, Kentucky, finalized the agreement.

The Fullers began to act to fulfill their part of the agreement. Orders for the Rick Wheat products were secured at two large retail outlets; however, Rick Wheat refused to sign any written agreements and these orders were lost.

The Fullers have filed this suit alleging claims of breach of contract, deceit based on fraud, deceit based upon concealment or non-disclosure, breach of fiduciary duties, breach of duty of good faith and fair dealing, and detrimental reliance on business promise. Rick Wheat was served in Paducah, Kentucky. Peggy Wheat was first served by a copy of her complaint being served upon her husband Rick Wheat. Second, the complaint was mailed to her last known address which was returned "Improper Address". Finally, a copy of the complaint was mailed to the Kentucky Secretary of State for service pursuant to the Kentucky Long-Arm Statute.

## STANDARD

The plaintiff bears the burden of establishing jurisdiction. *Third Nat'l Bank v. Wedge Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). Where, as here, there is no evidentiary hearing on the motion, the plaintiff need only make a prima facie showing of jurisdiction to avoid the motion to dismiss. *Id.* The Court must consider the pleadings and affidavits in a light most favorable to the non-moving party, and cannot weigh the controverting assertions of the party seeking dismissal. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Justice Scalia, in *Burnham v. Superior Court of California, County of Marin*, held that personal jurisdiction based on service of a non-resident while in the State does not violate the Due Process Clause when the suit is related to the non-resident's activities in the State. 495 U.S. 604 (1990). The Court stated, "[t]he short of the matter is that jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.'" *Id.* at 619.

In a diversity action, the Court must look to the law of the forum state to determine whether personal jurisdiction exists. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). "A Court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the states's long-arm statute and constitutional due process requirements." *Id*. The Court's exercise of jurisdiction comports with due process when the defendant has sufficient minimal contacts such that "traditional notions of fair play and substantial justice are not offended." *Id.* at 615-16 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Kentucky long-arm statute has been

understood to reach the limit permitted by the Constitution, thus the single issue is whether the jurisdiction sought is within the requirements of due process. *Tobin v. Astra Pharm. Prods., Inc.*, 993 F.2d 528, 542-43 (6th Cir. 1993).

The following criteria have historically been employed to determine if personal jurisdiction is appropriate:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (quoting *Theunissen*, 935 F.2d 1460).

## DISCUSSION

Applying the rule set forth in *Burnham v. Superior Court of California, County of Marin*, when a party is served within the State, personal jurisdiction is proper and does not violate the Due Process Clause. 495 U.S. 604, 619 (1990). Rick Wheat was served in Paducah, Kentucky and therefore personal jurisdiction is proper as to Rick Wheat.

In the alternative, personal jurisdiction is proper under the three-part test for personal jurisdiction: whether the defendant purposefully availed himself of the privilege of the State; the cause of action arises from defendant's activities; and the exercise of jurisdiction is reasonable.

First, the Court must examine if the Wheats purposefully availed themselves of the privilege of acting in Kentucky or causing consequences in Kentucky. Under the "purposeful availment" requirement the Court must determine if the Wheats' contact is merely collaterally related to Kentucky, or if it is the kind of substantial relationship with the forum state that invokes, by design, the benefits and protections of its laws. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir.

4

2000). "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* at 721-22.

The Wheats state that they have not personally availed themselves in Kentucky. The Wheats point to *Calphalon* as evidence that a mere written contract with a resident of a state does not subject a defendant to personal jurisdiction. The Court in *Calphalon*, however, went on to say that although the

> mere existence of a contract... for seventeen months is insufficient to confer personal jurisdiction... 'prior negotiations and contemplated future consequences, along with the terms of the contract and parties actual course of dealing' must be considered to determine whether 'the defendants purposefully established minimum contacts with the forum.'

228 F.3d at 722 (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1993). Essentially, it is the quality of the contacts rather than the quantity of contacts which is the subject of the Court's review. *Id.*

Taking the facts in a light most favorable to the non-moving party, the Wheats conducted clinics and sold products in Kentucky both before and after the events at issue occurred. Rick Wheat traveled to Kentucky a significant number of times to work on the development of the "signature series" with the Fullers, as did Penny Wheat. Additionally, the agreement was made in Kentucky and was partially performed in Kentucky. The Wheats "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state." *Id.* (citing *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1993).

The Wheats also emphasize that telephone calls, letters, and faxes are the types of contacts rejected by the Supreme Court as sufficient to support personal jurisdiction. Recently, however, the Sixth Circuit, in *Suncoke Energy Inc. v. Man Ferrostaal Aktiengesellschaft*, held that the

5

"alleged...agreement...and the activities of the parties leading to it and resulting from it should count as contacts in the determination" of personal jurisdiction. 563 F.3d 211 (6th Cir. 2009).

Given these facts, the Court finds that the Wheats have purposefully availed themselves of the privilege of conducting business in Kentucky by selling products in Kentucky, conducting clinics in Kentucky and traveling to Kentucky, as well as creating and performing the agreement at issue in Kentucky.

The "arising from" requirement is satisfied if the cause of action is related to or connected with the defendant's forum contacts. *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003). In *Southern Machine Co. v. Mohasco Industries*, the Sixth Circuit held that "[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract." 401 F.2d 374, 384 n.29 (6th Cir. 1968). This case arose from the agreement entered into by the Fullers and the Wheats. The question the Court must then determine is whether that agreement alone has sufficient contacts with the forum state to create personal jurisdiction.

While the agreement was negotiated in other states as well as Kentucky, the Fullers have made a prima facie showing that the agreement was finalized in Kentucky and at least partially performed in Kentucky. The Fullers have stated that the finalizing handshake took place in Kentucky. Additionally, the Fullers' work in development of the new "signature series" required by the agreement took place in Kentucky. Rick and Penny Wheat's travel to Kentucky to fulfill performance of the agreement is further evidence of the agreement's connection to Kentucky. In the alternative, the agreement arose as the result of the Wheats' equine clinics which were held in Kentucky, both in Paducah, Kentucky and at the Fullers' farm in Symsonia, Kentucky. The

6

operative facts of the Fullers' cause of action "arise from" the agreement at issue which has sufficient contacts with Kentucky to establish personal jurisdiction.

For the third criterion, the Court must determine if the acts of the Wheats have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendants reasonable. When the first two criteria are met, there is an inference of reasonableness. *Theunissen*, 935 F.2d at 1461. As such, "only the unusual case will not meet this third criterion." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir.1988).

The Supreme Court, in *Asahi Metal Industries Company v. Superior Court of California, Solano County*, held that determining reasonableness of jurisdiction is best found by balancing "'the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief,' giving due regard to 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" 480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980)).

First, the burden on the Wheats is somewhat substantial due to the distance from the forum. However, the Wheats often travel, often travel to the forum state, and the distance is not so great as to unduly burdensome. Second, Kentucky has a significant interest in this case because the Fullers are Kentucky residents and the contacts of the Wheats with the state are significant. Kentucky also has an interest in ensuring the agreements entered into by its residents are enforced and its residents are not defrauded.

Finally, the Fullers have a significant interest in obtaining relief; however, this interest would not be lost if the case were dismissed. The Fullers would retain the ability to file this case in a court

in Arkansas which would have general jurisdiction over the Wheats. This would not be the best location; however, because the operative facts arose out of the agreement which was reached in Kentucky.

The Wheats argue that personal jurisdiction is not reasonable because they could not have foreseen being haled into Kentucky based on a few isolated conversations. Although mere telephone calls, letters and faxes may constitute random, fortuitous and attenuated contacts, the Fullers have established a prima facie case that more substantive contacts were made with Kentucky, such that it is reasonable for the Wheats to foresee being haled into Kentucky.

As the above analysis demonstrates, all three criteria necessary for the existence of personal jurisdiction have been satisfied. Therefore, the Wheats' motion must be denied.

## CONCLUSION

For the foregoing reasons IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is DENIED.