UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-93

EQUIVENTURE, LLC, BENTLEY FULLER,
AND SHANNON FULLER                                                                              PLAINTIFFS

V.

RICK WHEAT AND PENNY WHEAT                                                          DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon Defendant Rick Wheat's motion for partial summary judgment (DN 51). After a series of extensions, Plaintiffs' response was due March 26, 2012 (DN 62). On April 2, 2012, Plaintiffs simultaneously filed a motion for leave to file their response to Defendant's motion for partial summary judgment (DN 63) and their response (DN 64). Defendant replied and moved this Court to strike Plaintiffs' response as untimely (DN 65). These matters are now ripe for adjudication. For the following reasons, Plaintiffs' motion for leave to file their response (DN 63) is GRANTED, Defendant's motion to strike (DN 65) is DENIED and Defendant's motion for partial summary judgment (DN 51) is GRANTED.

## BACKGROUND

Plaintiffs Bentley and Shannon Fuller are owners of Plaintiff Equiventure, LLC, a business that promotes equine nutrition and education. Defendant Rick Wheat is a "horse whisperer" who travels around the country performing equine clinics and promoting his patented Noavel Headstall product.[1] Defendant Penny Wheat, Rick Wheat's wife, shows trick horses and promotes and sale of Noavel Headstalls and other horse-related products. The parties became acquainted in November 2004, when Mr. and Mrs. Fuller attended a horse clinic and Noavel

---

[1] The Noavel Headstall, a replacement for a bridle, uses pressure on the horse's nose to guide and control the horse.

Headstall demonstration in Paducah, Kentucky.  In May 2005, Mr. and Mrs. Fuller invited Mr. Wheat to conduct at clinic at their farm.  After the event at the Fullers' farm, Mr. Wheat and Mr. Fuller began travelling together to promote sales of their respective products.

On August 18, 2006, over dinner in Springfield, Illinois, Mr. Wheat asked Mr. Fuller to join him in the business of promoting and selling the Noavel Headstall and related equine products.  After determining that more capital was needed for such a venture, Mr. Fuller and Mr. Wheat called Mrs. Fuller about the possibility of investing capital.  Plaintiffs' Ans. to Interr., DN 52-1 at ¶ 4.  Mrs. Fuller indicated her interest in the possibility and stated that they would meet to discuss the matter.  *Id*.  On October 15, 2006, Mr. Wheat met with Mr. Fuller in Villanow, Georgia at the Brotherhood of Working Farriers Association National Convention.  *Id*.  At this time, Mr. Wheat said that he would not go forward with Mrs. Fuller, but would go forward with Mr. Fuller.  *Id*.  Additionally, Mr. Wheat stated that he did not want a written agreement between him and Mr. Fuller.  *Id*.

On the weekend of November 4-5, 2006, while at the Houston Mull Memorial Ride in Marshall, Missouri, Mr. Fuller and Mr. Wheat came to an agreement (the "Agreement") regarding their business venture.  *Id*.  According to Plaintiffs, "the Agreement was designed to use Rick Wheat's name as a horse 'whisperer' together with the Noval [sic] Headstall and Penny Wheat and Bentley Fuller's capital investment together with his knowledge, experience, and training in the area of marketing, networking and maintaining sales operations to build a strong retail sales company."  Complaint, DN 1 at ¶ 26.  Pursuant to the Agreement, Mr. Fuller would assume responsibility for marketing all Rick Wheat products, including the Noavel Headstall and a series of new products which would be known as the "Signature Series."[2]  Mr. Fuller was also

---

[2] The Signature Series products were to include the following products:

2

to be responsible for building the Rick Wheat brand name by managing personal appearances and moving Mr. Wheat's clinics into larger venues. The Rick Wheat and Signature Series products were to be sold using the clinics and the internet. Mr. Fuller was to be responsible for funds necessary to develop and produce products. After sales began, Mr. Fuller was to be repaid his costs in developing the products and then the remaining profits would be equally split between Mr. Fuller and Mr. Wheat. However, Mr. Wheat would receive $100 for each Noavel Headstall sold and Mr. Fuller would receive $50 for each sold.[3]

On November 6, 2006, Mr. Wheat phoned Mr. Fuller to reaffirm the terms and conditions of the Agreement. On November 8, 2006, Mr. Fuller wrote a letter to Mr. Wheat requesting a written agreement. Plaintiffs' Ans. to Interr., DN 52-1 at ¶ 4; Nov. 8 Letter, DN 52-4. On the Wednesday after Mr. Wheat received the letter, Mr. Wheat and Mr. Fuller met at the Fullers' home in Symsonia, Kentucky for breakfast and "to have a handshake deal gratified." Plaintiffs' Ans. to Interr., DN 52-1 at ¶ 4. The Agreement was never reduced to writing.

At the time of the handshake agreement, Mr. Wheat asked Mrs. Fuller if she would agree to be a part of the partnership and asked her to perform the following tasks: (1) handle e-mail correspondence, (2) build mock-up catalogues, (3) manage bank accounts, (4) help develop the e-commerce site, and (5) work with Mrs. Wheat on clothing products. Plaintiffs' Affidavit, DN

---

1. A development of a multiple-media logo;
2. A website and domain name capable of accepting payment for all products'
3. Hat pins;
4. Custom-designed equine ropes;
5. Equine ropes with hardware for competition;
6. Embroidered dress shirts;
7. Specially-designed saddles;
8. Ladies' western attire; and
9. A video library designed to educate and assist in horse training.

[3] The Noavel Headstall sold for $150.

3

64-1 at ¶ 3-5.  Mrs. Fuller agreed to do so.  *Id*. at ¶ 5.  Mrs. Wheat called Mrs. Fuller afterwards and expressed her happiness about the partnership.  *Id*. at ¶ 6.  Additionally, on the day of the handshake agreement, Mr. Wheat and Mr. Fuller agreed that a corporate entity should open the e-commerce web site in order to reduce any personal liability.  *Id*. at ¶ 9.  Mr. Wheat and Mr. Fuller agreed to use Equiventure for that purpose.  *Id*.

In the months after the handshake agreement, Mr. Wheat spoke to Plaintiffs regarding business issues several times a week.  Plaintiffs allege that they expended significant time, energy, and effort into fulfilling their end of the Agreement.  Mr. and Mrs. Fuller took out a second mortgage on their home and used the money to study and build a portfolio of equine products, to design and build the products, and to place the products into a catalog.  Bentley Fuller Affidavit, DN 31-1 at ¶ 8.  Mr. Fuller estimates he spent 2,000 hours into the development of Rick Wheat products.  *Id*. at ¶ 13.  Mrs. Fuller estimates that she spent 1,000 hours doing so.  *Id*.  Plaintiffs state that two large retail outlets–Tractor Supply and Ivesco–were considering orders of Noavel Headstalls packaged to include a hat, a signed picture of Rick Wheat, and a training DVD valued between $500,000 and $1 million.  Plaintiffs contend that these orders were lost because Mr. Wheat refused to enter into written agreements.  Plaintiff's Ans. to Interr., DN 52-2 at ¶ 12.

When Mr. Fuller had the website ready, he received a "panicked" call from Mr. Wheat.  Bentley Fuller Affidavit, DN 31-1 at ¶ 11.  Mr. Wheat requested that the website "not be turned on" because there was a judgment against him in United States District Court at Little Rock, Arkansas and the plaintiff's attorneys in that case were "attaching everything he owned."  *Id*.  After that telephone call, Mr. Wheat "fell off the circuit."  *Id*. at ¶ 14.  Mr. Fuller then drove to Mr. Wheat's home in Arkansas.  *Id*.  At this meeting, Mr. Wheat told Mr. Fuller that he had

4

signed an agreement with a company named Whisperide, LLC to develop his products. *Id*. At that time, Whisperide had a full line of products which Plaintiffs alleges appeared to be the same or nearly the same as the products developed by Mr. and Mrs. Fuller. *Id*. At Mr. Wheat's suggestion, Mr. Fuller approached Whisperide to tell them about the work he had performed in developing the products; however, Whisperide did not want to be involved with any of the work Mr. Wheat had been doing with any other individual. *Id*. at ¶ 15. As a result, Mr. and Mrs. Fuller had expended $90,000 and "were simply stuck with a line of products for Rick Wheat to sell, but could not be sold." Bentley Fuller Affidavit, DN 31-1 at ¶ 16. Plaintiffs alleged that, had Rick Wheat honored the agreement and the E-commerce website gone live, there would have been significant activity and sales of Rick Wheat products. *Id*.

Plaintiffs then brought suit against Defendants, asserting claims for breach of contract, deceit, breach of fiduciary duties, breach of duty of good faith and fair dealing, and detrimental reliance upon business promise. By order dated August 26, 2011, this Court granted Defendants' unopposed motion for partial summary judgment on Plaintiffs' breach of contract claim (DN 43). Defendants then amended their answer and asserted counterclaims for tortious interference with contract and business relationship, quantum meruit, and conversion. Defendant Rick Wheat ("Defendant") now moves for partial summary judgment as to Plaintiffs Shannon Fuller's and Equiventure's claims.

## DISCUSSION

### I. Plaintiffs' Motion for Leave to File Response and Defendants' Motion to Strike Plaintiffs' Response

Defendant filed this motion for partial summary judgment (DN 51) on February 1, 2012. On February 28, 2012, Plaintiffs filed an agreed motion for an extension of time in which to

respond to Defendant's motion for summary judgment (DN 56).[4]  The Court granted that motion on March 1, 2012 and extended to time in which to respond to March 5, 2012 (DN 57).  On March 16, 2012, Plaintiffs again moved for an extension of time in which to respond (DN 58).  In support of this motion, Plaintiffs cited counsel's computer difficulties during the period of March 5 to March 16.  Defendant opposed that motion, pointing out that the alleged computer issues were discovered on the day Plaintiffs' response was due (DN 59).  On March 23, 2012, the Court granted Plaintiffs' motion for an extension, and ordered that Plaintiffs' response shall be filed on or before March 26, 2012 (DN 62).  On April 2, 2012, Plaintiffs simultaneously moved for leave to file their response to Defendants' motion for summary judgment (DN 63) and filed their response (DN 64).  In support of the motion for leave to file the response, Plaintiffs stated that, in addition to the before-mentioned computer difficulties, counsel had trials in other cases set for March 26, 2012 and April 9, 2012.  Defendant, in his reply in support of his motion for summary judgment, moved to strike the Plaintiffs' response (DN 65).  In support of this motion, Defendant contends that "Plaintiffs have demonstrate inexcusable neglect and disdain for court-imposed deadlines in responding to Separate Defendant's Motion for Partial Summary Judgment . . . ."  DN 65 at ¶ 9.

Pursuant to Federal Rule of Civil Procedure 6, if a party requests an extension of the response time after the deadline has passed, the Court may only grant the extension if the party failed to act because of excusable neglect. Fed. R. Civ. P. 6(b)(1)(B).  The determination of "excusable neglect" is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship*, 507 U.S. 380, 395 (1993).  The Supreme Court has set out five factors a Court should consider when

---

[4] It appears that separate counsel for Defendant Penny Wheat agreed to the motion for an extension.

determining the existence of excusable neglect: (1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; (4) whether the delay was within the reasonable control of the moving party; and (5) whether the late-filing party acted in good faith. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer*, 507 U.S. at 395).

Here, Plaintiffs filed their motion for leave to file their response to Defendant's motion for summary judgment one week after the deadline. Although Plaintiffs' excuses for failing to respond or move for an extension before the deadline passed are less than compelling, allowing Plaintiffs' response to be filed will pose no danger of prejudice to Defendant and will have no impact on judicial proceedings. Additionally, there is nothing to suggest that Plaintiffs acted in bad faith. Balancing the factors, the Court will allow Plaintiffs' response to be filed and will deny Defendant's motion to strike the response.

## II. Defendant's Motion for Summary Judgment

Defendant contends that he is entitled to summary judgment as to Shannon Fuller and Equiventure because there is no evidence to support their claims against him for deceit, breach of fiduciary duties, breach of duty of good faith and fair dealing, and detrimental reliance upon business promise.

### a. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

    **b. Deceit Based on Fraud in the Inducement**

Plaintiffs have asserted claims against Defendant Rick Wheat for deceit based upon fraud in the inducement. To succeed on a claim for deceit based upon fraud in the inducement, a plaintiff must show by clear and convincing evidence that: (1) the declarant made a material misrepresentation to the plaintiff; (2) this misrepresentation was false; (3) the declarant knew it was false or made it with reckless disregard as to its falsity; (4) the declarant induced the plaintiff to act upon the misrepresentation; (5) the plaintiff relied upon the misrepresentation; and (6) the

misrepresentation caused injury to the plaintiff. *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464 (Ky. 1999). "In addition, 'a misrepresentation to support an allegation of fraud must be made concerning a present or pre-existing fact, and not in respect to a promise to perform in the future.'" *PCR Contractors, Inc. v. Danial*, 354 S.W.3d 610, 613 (Ky. App. 2011) (quoting *Filbeck v. Coomer*, 182 S.W.2d 641, 643 (1944)). However, "[o]ne may commit fraud in the inducement by making representations as to his future intentions when in fact he knew at the time the representations were made he had no intention of carrying them out." *Major v. Christian County Livestock Market*, 300 S.W.2d 246, 249 (Ky. 1957).

Defendant contends that he is entitled to summary judgment as to Shannon Fuller's and Equiventure's claims of deceit because Defendant made no misrepresentations to either of these Plaintiffs. In response to Defendant's motion for summary judgment, Plaintiffs attached an Affidavit of Bentley Fuller and Shannon Fuller. The Affidavit is the only evidence submitted by Plaintiffs in support of their position that there are genuine issues of material facts in existence which preclude summary judgment for Defendant.[5] In the Affidavit, Plaintiffs state that "[a]t the time of the 'handshake agreement' Rick Wheat asked Shannon Fuller if she would agree to be part of the partnership" and asked her to handle certain aspects of the proposed business. Plaintiff Affidavit, DN 64-1 at ¶ 3-5. Plaintiffs further state that "Penny Wheat called Shannon

---

[5] Pursuant to Federal Rule of Civil Procedure 56(c)(1)(A), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  ). If a party fails to properly address another party's assertion of fact in accordance to Rule 56(c), the court may do one of the following: "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

9

Fuller later and was excited and happy about the new partnership." *Id* at ¶ 6.  With respect to Equiventure, Plaintiffs state that, "[o]n the day of the 'handshake agreement,' both Rick Wheat and Bentley Fuller agreed that a corporate entity should open the Ecommerce web site in order to reduce and [sic] personal liability that might arise of the web site" and agreed to use Equiventure for that purpose.  *Id*. at ¶ 9.

The Court finds that Defendants are entitled to summary judgment on Shannon Fuller's and Equiventure's fraudulent inducement claims because Plaintiffs have failed to identify any material misrepresentation made by Defendant to either Mrs. Fuller or Equiventure.  The statements identified by Plaintiffs as being made to Mrs. Fuller by Mr. Wheat were merely questions regarding Mrs. Fuller's role in the business venture and not statements or promises as to his future intentions which may form the basis of an action for fraud.  Likewise, Plaintiffs have identified no misrepresentation made to Equiventure.  Accordingly, there is no genuine issue of material fact as to Mrs. Fuller's and Equiventure's fraudulent inducement claims and Defendant is entitled to summary judgment as a matter of law.

### c.  Deceit Based Upon Fraudulent Concealment

Plaintiffs have also asserted claims against Defendant for deceit based upon fraudulent concealment.  To succeed on a claim for deceit based upon fraudulent concealment, a plaintiff must show (1) that the defendant had a duty to disclose a fact, (2) that defendants failed to disclose that fact, (3) that the defendant's failure to disclose that fact induced the plaintiff to act, and (4) that the plaintiff suffered actual damages.  *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc*., 113 S.W.3d 636, 641 (Ky. App. 2003).  "A duty to disclose facts is created only where a confidential or fiduciary relationship between the parties exists, or when a statute imposes such a

duty, or when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure." *Id*.

The Court finds that Defendant is entitled to summary judgment on Shannon Fuller's and Equiventure's deceit claims based upon fraudulent concealment. Plaintiffs have failed to identify any fact or facts that Defendant had a duty to disclose and failed to disclose to Mrs. Fuller or Equiventure. Accordingly, there is no genuine dispute as to any material fact and Defendant is entitled to judgment as a matter of law on these Plaintiffs' fraudulent concealment claims.

### d. Breach of Fiduciary Duties

In their complaint, Plaintiffs contend that the agreement between the parties constituted a partnership under Kentucky law and that Defendants breached their fiduciary duties to Plaintiffs when they failed to and refused to open the business website and sell the products, and when they entered into an exclusive agency agreement with Whisperide. To succeed on a claim of breach of fiduciary duties, Plaintiffs must show that (1) Defendant owed a fiduciary duty to Plaintiffs, (2) Defendants breached that duty, and (3) Plaintiffs suffered damages as a result of the breach. *See Academic Imaging, LLC v. Soterion Corp*., 352 Fed Appx. 59, 68 (6th Cir. 2009).

Defendant contends that he is entitled to summary judgment as to Mrs. Fuller's and Equiventure's breach of fiduciary duties claim because there is no evidence of any agreement between these Plaintiffs and Defendant and therefore, Defendant owed no fiduciary duty to them. In response, Plaintiffs contend that Mrs. Fuller and Equiventure were parties to the verbal partnership agreement. "[P]artners owe the utmost good faith to each and every other partner." *Lach v. Man O'War, LLC*, 256 S.W.3d 563, 569 (Ky. 2008). In Kentucky, the formation of a

partnership is governed by the Uniform Partnership Act, KRS Chapter 362 *eq. seq.* A partnership is statutorily defined as "an association of two (2) or more persons to carry on as co-owners a business for profit . . . ." KRS § 362.175(1).

There is no evidence that Mrs. Fuller and Equiventure were partners with Defendants. According to Plaintiffs' answers to Defendants' interrogatories, on October 15, 2006, Mr. Wheat expressed that he would go forward with Mr. Fuller but did not want to go forward with Mrs. Fuller. DN 52-1 at ¶ 5. Additionally, according to Plaintiffs, during the November 4 and 5, 2006 meetings in Marshall, Missouri, "the terms and conditions of the basically 50/50 partnership as described in the complaint between Rick Wheat and Bentley Fuller was discussed." *Id.* There is evidence that Mrs. Fuller was asked to perform services on behalf of the alleged partnership; however there is no evidence that Mrs. Fuller was to be a co-owner of the business and share in the profits and the losses. "[T]he mere fact that a wife participates in the conduct of a business does not necessarily establish a partnership between a husband and a wife unless there exists some other indicia of a partnership." *Matter of Ward*, 6 B.R. 93 (Bankr. M.D. Fla. 1980); *see also Miller v. City Bank & Trust Co.*, 266 N.W.2d 687, 690 (Mich. App. 1978) ("Even though plaintiff worked long and hard hours, this does not establish that the parties had an agreement to form a partnership. This evidence could also be viewed as consistent with an employer-employee relationship or that of a helpful wife who assisted her husband without them intending a legal partnership."). Likewise, although there is evidence that Equiventure was to be used to operate a web site, there is no evidence that Equiventure was to be a partner in the alleged business venture. Because Plaintiffs cannot show that Mrs. Fuller or Equiventure were partners with Defendants, they cannot establish that Defendant owed them any fiduciary duties.

Accordingly, Defendant is entitled to summary judgment on Mrs. Fuller's and Equiventure's claims for breach of fiduciary duties.

### e. Breach of Duty of Good Faith and Fair Dealing

Next, Plaintiffs claim that the agreement for Plaintiffs to be exclusive marketing agents for Defendant's products carried with it the duty to operate in good faith and fair dealing with all other parties and that Defendant breached this duty when he (1) refused to allow the opening of the website, (2) executed an agreement to sell products through Whisperide, and (3) sold products themselves without the agreement of Plaintiffs.

"With every contract, there is an implied covenant of good faith and fair dealing, and contracts imposed on the parties thereto a duty to do everything necessary to carry them out." *Farmers Banks and Trust Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005). Thus, in the absence of an underlying contract, no covenant of good faith and fair dealing arises. *Auto Channel Inc. v. Speedvision Network LLC*, 144 F.Supp.2d 784, 791 (W.D. Ky. 2001) (citing *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991)).

Here, Plaintiffs have admitted that, pursuant to Kentucky's statute of frauds, KRS § 371.010(7), any oral contract that existed between the parties could not be enforced. DN 31 at p. 6. Additionally, the Court has determined that there is no evidence of any oral partnership agreement between Defendant and Mrs. Fuller and Equiventure. The Sixth Circuit, applying Ohio law, has explained that the covenant of good faith and fair dealing is merely a rule of construction and not an independent basis for a cause of action: "such a covenant means only that, when a contract is susceptible to a fraudulent interpretation as well as an honest one, the latter should be presumed." *Ebie v. Teledyne Industries, Inc.*, 859 F.2d 152 (6th Cir.

1988)(unpublished).  In addition, another court in this district has stated that "in Kentucky, it appears the covenants of good faith and fair dealing do not give rise to a separate tort claim in cases where the parties are not in a special relationship." *Hulda Scheoning Family Trust v. Powertel/Kentucky Inc.*, 275 F.Supp.2d 793, 796-97 (W.D. Ky. 2003) (citing *Ennes v. H & R Block Eastern Tax Services, Inc.*, 2002 WL 226345 (W.D. Ky. Jan. 11, 2002) (explaining that Kentucky courts have not extended the tort for breach of the covenant of good faith and fair dealing to non-insurance contracts and thus declining to recognize an independent cause of action)).  Thus, because any oral contact is unenforceable due to the statute of frauds and there is no special relationship between the parties, Defendant is entitled to summary judgment on Mrs. Fuller's and Equiventure's claims for breach of the covenant of good faith and fair dealing.

### f. Detrimental Reliance

Lastly, Plaintiffs claim that they detrimentally relied upon Defendant's promise that Plaintiffs would be the sole agent for the sale of Defendant's products.  Detrimental reliance, or the doctrine of promissory estoppel, provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.  The remedy granted for breach may be limited as justice requires." *Meade Constr. Co. v. Mansfield Commercial Elec., Inc.*, 579 S.W.2d 105, 106 (Ky. 1979).

The Court finds that Defendant is entitled to summary judgment on these Plaintiffs' detrimental reliance claims for several reasons.  First, Kentucky courts have not found that the doctrine of promissory estoppel can defeat the statute of frauds.  *See Sawyer v. Mills*, 295 S.W.3d 79, 89-90 (Ky. 2009).  Although in *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 471 (Ky. 1999) the Kentucky Supreme Court stated that "the statute of frauds is not a bar to

a fraud or promissory estoppel claim based on an oral promise of indefinite employment," the Court later explained that it was "incorrect[] [to] infer[] from *Rickert* that detrimental reliance is a bar to the statute of frauds." *Willmott Hardwoods*, 171 S.W.3d at 10. The Court in *Willmott Hardwoods* then went on to note that, except in the most extreme circumstances, even equitable estoppel (which requires a showing of fraud) cannot defeat the statute of frauds, "lest the Court fun afoul of judicial amending the statute in violation of separation of powers." *Id*. Here, Plaintiffs have acknowledged that any oral contract between the parties could not be enforced because of the statute of frauds. Accordingly, the doctrine of promissory estoppel cannot be utilized to enforce any alleged promise made by Defendant to Mrs. Fuller and Equiventure.

Second, even if the doctrine of promissory estoppel were applicable, Plaintiffs have neither identified nor presented any evidence of a sufficiently clear and definite promise made by Defendant to Mrs. Fuller or Equiventure. In response to a motion for summary judgment, it is the obligation of the non-moving party to support his or her theory of promissory estoppel. Because Plaintiffs have failed to provide evidence of one or more elements of estoppel, summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED as follows:

(1) Plaintiffs' motion for leave to file their response to Defendant's motion for partial summary judgment (DN 63) is GRANTED.

(2) Defendant's motion to strike Plaintiff's response (DN 65) is DENIED.

(3) Defendant Rick Wheat's motion for partial summary judgment (DN 51) is GRANTED and Shannon Fuller's and Equiventure's claims against Rick Wheat are DISMISSED.

A separate order consistent with this Memorandum Opinion will be entered.